UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------x

SOTHEBY'S, INC.,                    :
                                    :
              Plaintiff,            :
                                    :   08-Civ-7694(BSJ)
         v.                         :
                                    :   **ORDER**
                                    :
                                    :
HALSEY MINOR,                       :
                                    :
              Defendant.            :
-----------------------------------x

**BARBARA S. JONES**
**UNITED STATES DISTRICT JUDGE**

Plaintiff Sotheby's, Inc. ("Plaintiff" or "Sotheby's") brings this suit against Halsey Minor ("Defendant" or "Minor") seeking damages for breach of contract. Specifically, Sotheby's Complaint alleges three breach of contract claims relating to the sale of three paintings: (1) "Diamond Dust Shoes," by Andy Warhol, (2) "Carriage in Winter," by Childe Hassam, and (3) "The Peaceable Kingdom with the Leopard of Serenity" ("Peaceable Kingdom"), by Edward Hicks. Minor asserts eight affirmative defenses and counterclaims for rescission of contract as to Carriage in Winter and Peaceable Kingdom.

Before the Court are several motions. For the reasons set forth below, (1) Sotheby's Motion for Partial Summary Judgment (Docket Item 35) on its first claim and dismissing Minor's claim under New York City Department of Consumer

1

Affairs ("DCA") regulations is GRANTED; (2) Minor's Motion for Partial Summary Judgment (Docket Item 54) on Sotheby's second and third claims is DENIED; (3) Sotheby's Motion In Limine (Docket Item 51) to exclude testimony by expert witnesses proffered by Minor in support of his Motion for Partial Summary Judgment is DENIED AS MOOT; (4) Sotheby's Motion for Summary Judgment (Docket Item 52) on its second and third claims and dismissing all of Minor's remaining defenses and counterclaims is GRANTED; and (5) Minor's Motion to Strike (Docket Item 69) material submitted by Sotheby's in support of its summary judgment reply is DENIED AS MOOT.

## II. BACKGROUND

### A. Procedural History

Sotheby's commenced this action against Minor on September 2, 2008 alleging that Minor had contracted to purchase three works of art from Sotheby's, but never paid the amounts due under the contracts. (Complaint ("Compl."), dated Sept. 2, 2008 (Docket Item 1)). Minor originally asserted a counterclaim for reformation of the contract for purchase of Peaceable Kingdom, or, in the alternative, for rescission of the contract, as well as nine affirmative defenses. (Def.'s Answer, Countercl., and Jury Demand, dated September 22, 2008 (Docket Item 6).)

2

One month after Sotheby's commenced this action, Minor
brought an action against Sotheby's in the Northern
District of California alleging, *inter alia*, breach of
fiduciary duty and violation of the New York General
Business Law ("N.Y. Gen. Bus. Law") Section 349.
(California Compl., attached as Ex. A to Decl. of Lee A.
Weiss in Supp. of Def.'s Mot. for Leave to File Am. Answer,
Countercls., and Jury Demand ("Weiss Decl. in Supp. of Am.
Answer"), ¶¶ 37-47, 51-65.) In an Order dated January 6,
2009, this Court granted Sotheby's motion to enjoin
prosecution of the California action because the two cases
involved the same parties and issues and the New York
action was filed first. (Order, dated Jan. 6, 2009 (Docket
Item 25).) The following day, the California Court granted
Sotheby's motion to dismiss for the same reasons. (Order,
dated Jan. 7, 2009, Weiss Decl. in Supp. of Am. Answer, Ex.
B.)

On April 9, 2009, Minor filed a Motion for Leave to
File an Amended Answer, Counterclaims, and Jury Demand
("Motion to Amend"). (Docket Item 30.) Minor sought to (1)
amend his original counterclaim to seek rescission rather
than reformation with respect to Peaceable Kingdom, (2) add
a new counterclaim for rescission of contract for purchase
of Carriage in Winter, and (3) add new counterclaims for

3

breach of fiduciary duty and violation of N.Y. Gen. Bus.
Law Section 349. Sotheby's opposed amendment only with
respect to the new counterclaims for breach of fiduciary
duty and violation of Section 349. (Sotheby's Opp'n to
Def.'s Mot. for Leave to Am., dated May 12, 2009 (Docket
Item 38) at 1.)

On May 12, 2009, Sotheby's filed its Motion for
Partial Summary Judgment. Sotheby's filed its Motion for
Summary Judgment on all remaining claims, in conjunction
with its Motion In Limine, on July 31, 2009. On the same
day, Minor filed his Motion for Partial Summary Judgment on
Sotheby's second and third claims. On October 23, 2009,
Minor filed his Motion to Strike to exclude material
Sotheby's submitted in support of its summary judgment
reply. All these motions are fully briefed and decided in
this opinion.

In an Order dated October 26, 2009, Magistrate Judge
Henry Pitman decided Minor's Motion to Amend. Judge Pitman
denied Minor's motion to add counterclaims for breach of
fiduciary duty and violation of N.Y. Gen. Bus. Law Section
349 and granted the motion to amend in all other respects.
See Sotheby's Inc. v. Minor, 2009 U.S. Dist. LEXIS 99332
(S.D.N.Y. 2009). Minor filed no objections to Judge
Pitman's Order.

## B. FACTS[1]

### 1. Sotheby's First Claim for Relief

Sotheby's First Claim for Relief in this action is based on Minor's agreement to purchase an artwork known as "Diamond Dust Shoes" by Andy Warhol. (Sotheby's Stmt. of Uncontested Material Facts Pursuant to Local Rule 56.1 in Supp. of its Mot. for Partial Summ. J. ("Sotheby's PSJ 56.1 Stmt.") ¶1; Def. Halsey Minor's Resp. to Sotheby's, Inc.'s Stmt. of Uncontested Material Facts Pursuant to Local Rule 56.1 ("Minor's Resp. to Sotheby's PSJ 56.1 Stmt.") ¶1.) Minor was the high bidder for Diamond Dust Shoes at a Sotheby's May 15, 2008 Contemporary Art Morning Auction (the "May 15, 2008 Auction"). [2] (Id.) Sotheby's catalogue for that auction includes "Conditions of Sale" that form the contract among Sotheby's, the consignors of items sold in that auction, and the buyers of those items. (Sotheby's PSJ 56.1 Stmt. ¶2; Minor's Resp. to Sotheby's PSJ 56.1 Stmt. ¶2.)

Prior to the May 15, 2008 Auction, Minor inspected Diamond Dust Shoes, which was on exhibit at Sotheby's when Minor and his wife attended a Sotheby's auction on February

---

[1] The following facts are undisputed unless otherwise noted.
[2] The parties do not dispute that Minor "agreed to buy" Diamond Dust Shoes, though this is an issue in dispute with regard to Carriage in Winter and Peaceable Kingdom. (Sotheby's SJ 56.1 Stmt. ¶23; Minor's Resp. to Sotheby's SJ 56.1 Stmt. ¶23.)

14, 2008. (Sotheby's PSJ 56.1 Stmt. ¶3; Minor's Resp. to Sotheby's PSJ 56.1 Stmt. ¶3.) Minor made the successful or high bid for Diamond Dust Shoes during the May 15, 2008 auction in the amount of a "hammer price" of $250,000. (Sotheby's PSJ 56.1 Stmt. ¶4; Minor's Resp. to Sotheby's PSJ 56.1 Stmt. ¶4.) Pursuant to the Conditions of Sale, Minor agreed that the total purchase price would also include a buyer's premium. (Sotheby's PSJ 56.1 Stmt. ¶5; Minor's Resp. to Sotheby's PSJ 56.1 Stmt. ¶5.) As provided in the Conditions of Sale, the buyer's premium is 25% of the hammer price up to and including $20,000 and 20% of any amount in excess of $20,000 up to and including $500,000. (Id.) The buyer's premium for Minor's purchase of Diamond Dust Shoes, based on the $250,000 hammer price, was $51,000. (Sotheby's PSJ 56.1 Stmt. ¶6; Minor's Resp. to Sotheby's PSJ 56.1 Stmt. ¶6.)

On May 19, 2008, Sotheby's sent Minor an invoice, at Minor's San Francisco address, for the total purchase price of $301,000 for Diamond Dust Shoes. (Id.) In the cover letter that accompanied the invoice, Sotheby's tendered Diamond Dust Shoes to Minor by notifying him that, "You can pick up your property or arrange for it to be collected. Alternatively, we can arrange for your property to be shipped to you. Please complete and return the shipping

instruction form within 30 days." (Sotheby's PSJ 56.1 Stmt. ¶7; Minor's Resp. to Sotheby's PSJ 56.1 Stmt. ¶7.)

The shipping instruction form Sotheby's sent with the invoice advised Minor, among other things, that he would not have to pay California sales tax if he directed shipment of Diamond Dust Shoes to a location outside California. (Sotheby's PSJ 56.1 Stmt. ¶8; Minor's Resp. to Sotheby's PSJ 56.1 Stmt. ¶8.)

The Conditions of Sale provide that auction buyers will immediately pay the full purchase price for items they have purchased. (Sotheby's PSJ 56.1 Stmt. ¶9; Minor's Resp. to Sotheby's PSJ 56.1 Stmt. ¶9.) Prior to the May 15, 2008 Auction, however, Minor requested, and Sotheby's agreed, that Minor could take 90 days (until August 13, 2008) to pay if he purchased Diamond Dust Shoes. (Id.) When Sotheby's invoiced Minor for Diamond Dust Shoes, it also sent him a form he was required to sign and return in order to modify the Conditions of Sale and provide for 90 days for payment. (Id.) Minor never returned the signed form and the requirement for immediate payment for Diamond Dust Shoes was never modified. (Id.)

To date, Minor has paid nothing to Sotheby's on account of his successful bid for Diamond Dust Shoes. (Sotheby's PSJ 56.1 Stmt. ¶10; Minor's Resp. to Sotheby's PSJ 56.1

Stmt. ¶10.) Pursuant to the Conditions of Sale, Minor
agreed that, if he did not make timely payment, Sotheby's
could impose "from the date of sale a late charge of the
annual percentage rate of Prime +6% of the total purchase
price." (Sotheby's PSJ 56.1 Stmt. ¶11; Minor's Resp. to
Sotheby's PSJ 56.1 Stmt. ¶11.) As of May 12, 2009, the late
charge owed by Minor is $30,653.92 and is increasing on a
daily basis. (Id.)

Pursuant to the Conditions of Sale, Minor also agreed
that, if he defaulted in fulfilling any of the Conditions
of Sale, including the requirement for payment of the total
purchase price, he would be liable for Sotheby's "legal
fees and expenses, collection fees and incidental damages."
(Sotheby's PSJ 56.1 Stmt. ¶12; Minor's Resp. to Sotheby's
PSJ 56.1 Stmt. ¶12.)

Sotheby's resold Diamond Dust Shoes in a public
auction in May 2009 for $218,500. (Reply Decl. Jonathan A.
Olsoff ("Olsoff Reply Decl."), dated June 22, 2009, ¶2.)

**2. Sotheby's Second and Third Claims for Relief**

Sotheby's Second and Third Claims for Relief are for
breach of contract relating to, respectively, Carriage in
Winter and Peaceable Kingdom. (Sotheby's Stmt. of
Uncontested Material Facts Pursuant to Local Rule 56.1 in
Supp. of its Mot. for Summ. J. ("Sotheby's SJ 56.1 Stmt.")

¶1; Def. Halsey Minor's Resp. to Sotheby's, Inc.'s Stmt. of
Uncontested Material Facts Pursuant to Local Rule 56.1
("Minor's Resp. to Sotheby's SJ 56.1 Stmt.") ¶1.) Minor
inspected both pieces prior to the May 22, 2008 American
Paintings Auction (the "May 22, 2008 Auction") in which the
two paintings were sold. (Sotheby's SJ 56.1 Stmt. ¶3;
Minor's Resp. to Sotheby's SJ 56.1 Stmt. ¶3.) During the
auction, Minor made successful bids of $3.5 million for
Carriage in Winter and $8.6 million for Peaceable Kingdom.
(Sotheby's SJ 56.1 Stmt. ¶3; Defendant's Answer,
Counterclaim and Jury Demand ("Am. Answer") ¶19.)

Sotheby's Auction catalogue for the May 22, 2008
Auction also contained "Conditions of Sale." (Sotheby's SJ
56.1 Stmt. ¶2; Minor's Resp. to Sotheby's SJ 56.1 Stmt.
¶2.) Applying those conditions, the total purchase price,
inclusive of the buyer's premium, amounted to $3,961,000
for Carriage in Winter and $9,673,000 for Peaceable
Kingdom. (Sotheby's SJ 56.1 Stmt. ¶3.) Minor disputes
Sotheby's claim that he agreed to buy Carriage in Winter
and Peaceable Kingdom because "Sotheby's had significant
economic interests in the artworks at issue, which it
failed to disclose in violation of its own representations
and guidelines, as set forth in its catalogue, and in
violation of applicable law." (Minor's Resp. to Sotheby's

SJ 56.1 Stmt. ¶1.) As a result, Minor claims there were no agreements by him to purchase the paintings. (Id.)

On May 27, 2008, Sotheby's invoiced Minor for both paintings. (Sotheby's SJ 56.1 Stmt. ¶5; Minor's Resp. to Sotheby's SJ 56.1 Stmt. ¶5.) The Conditions of Sale require auction buyers to pay immediately after the auction. (Sotheby's SJ 56.1 Stmt. ¶5; Minor's Resp. to Sotheby's SJ 56.1 Stmt. ¶5.) When Sotheby's invoiced Minor, it sent a terms letter to provide him with 90 days to pay for the paintings. (Id.) In the same letter, Sotheby's advised Minor that it would release the paintings to him when he made payment. (Sotheby's SJ 56.1 Stmt. ¶5; Minor's Resp. to Sotheby's SJ 56.1 Stmt. ¶5.) Minor has not paid anything to Sotheby's for either Carriage in Winter or Peaceable Kingdom. (Sotheby's SJ 56.1 Stmt. ¶4; Minor's Resp. to Sotheby's SJ 56.1 Stmt. ¶4.)

Carriage in Winter was resold in a May 21, 2009 auction for a total purchase price of $2,322,500. (Sotheby's SJ 56.1 Stmt. ¶7; Minor's Resp. to Sotheby's SJ 56.1 Stmt. ¶7.) Sotheby's notified Minor and the Court that Peaceable Kingdom was resold in February 2010, for a purchase price of 7 million.

Pursuant to the Conditions of Sale, Sotheby's could impose a "late charge" at the rate of "Prime + 6% of the

total purchase price." (Sotheby's SJ 56.1 Stmt. ¶8; Minor's
Resp. to Sotheby's SJ 56.1 Stmt. ¶8.) Sotheby's claims that
as of July 31, 2009, Minor owes late charges of over
$467,000 for Carriage in Winter and over $1.1 million for
Peaceable Kingdom. (Sotheby's SJ 56.1 Stmt. ¶8.) Sotheby's
also claims that Minor agreed that he would pay Sotheby's
"legal fees and expenses." (Id.) Minor disputes that he
owes anything. (Minor's Resp. to Sotheby's SJ 56.1 Stmt.
¶8.)

## 3. Minor's Dealings with Sotheby's and Mitchell

Dara Mitchell ("Mitchell") is the head of Sotheby's
American Paintings Department and has been a Sotheby's
employee for more than twenty-four years. (Sotheby's SJ
56.1 Stmt. ¶9; Minor's Resp. to Sotheby's SJ 56.1 Stmt.
¶9.) Although Minor had met Mitchell previously, they had
not communicated for many years before Minor emailed
Mitchell on February 23, 2008 to ask for help in buying 18th
and 19th Century American art. (Id.) From February to May
2008, Minor and Mitchell exchanged emails regarding various
pieces of artwork of potential interest to Minor.
(Declaration of Dara Mitchell in Supp. of Sotheby's Mot.
for Summ. J. ("Mitchell Decl."), dated July 29, 2009, Exs.
1,2,3,5.)  Minor participated in the May 22, 2008 auction
by telephone and was on the phone with Mitchell at all

times when he was bidding. (Sotheby's SJ 56.1 Stmt. ¶35;
Minor's Resp. to Sotheby's SJ 56.1 Stmt. ¶35.)

## 4. Sotheby's May 22, 2008 Auction Catalogue

It is undisputed that the Sotheby's May 22, 2008
Auction catalogue included a section entitled "Buying at
Auction." (Def.'s Stmt. of Undisputed Material Facts
Pursuant to Local Rule 56.1 in Supp. of Mot. for Partial
Summ. J. on Pl.'s Second and Third Causes of Action
("Def.'s 56.1 Stmt. in Supp. of PSJ"), ¶ 21; Resp. to
Def.'s 56.1 Stmt. in Supp. of PSJ ¶ 21.) That section
includes a "Symbol Key," which explained the meaning of
certain symbols that may, presumably, appear in the
catalogue. (Def.'s 56.1 Stmt. in Supp. of PSJ ¶ 22; Resp.
to Def.'s 56.1 Stmt. in Supp. of PSJ, ¶ 22; See Decl. Lee
A. Weiss Supp. Def.'s Opp'n Sotheby's Mot. for Summ. J and
Sothbey's Mot. In. Limine ("Weiss Decl. Opp'n to Sotheby's
Mot. for Summ. J."), Ex. 34.) The Symbol Key describes
Sotheby's use of the triangle symbol as follows: "Δ
Property in which Sotheby's has an ownership interest. Lots
with this symbol indicate that Sotheby's owns the lot in
whole or in part or has an economic interest equivalent to
an ownership interest." (Id.) In the catalogue, Sotheby's
did not place a Δ next to either Carriage in Winter or

Peaceable Kingdom.(Def.'s 56.1 Statement in Supp. of PSJ ¶ 25; Resp. to Def.'s 56.1 Statement in Supp. of PSJ, ¶ 25.)

**5. Sotheby's Agreement with the Owner of Carriage in Winter**

On February 29, 2008, Sotheby's, its affiliate, Sotheby's Financial Services ("SFS") and the owner of Carriage in Winter, the Gilbert A. Harrison Trust (the "Harrison Trust") entered into a Loan and Consignment Agreement ("the Harrison Agreement"). (Sotheby's SJ 56.1 Stmt. ¶53; Minor's Resp. to Sotheby's SJ 56.1 Stmt. ¶53.) Pursuant to the Harrison Agreement, SFS loaned $5.85 million to the Harrison Trust and was granted a collateral interest, for repayment of the loan, in approximately 50 art works, including Carriage in Winter. (Id.)

The Harrison Agreement gave SFS "the rights, powers and privileges of a secured party under the New York Commercial Code." (Sotheby's SJ 56.1 Stmt. ¶55; Minor's Resp. to Sotheby's SJ 56.1 Stmt. ¶55.) The agreement did not transfer ownership of any collateral. (Id.) The Harrison Trust warranted that it was the "sole and absolute owner of the Property." (Id.) Sotheby's was granted the right to offer the property for sale included in the Harrison Agreement. (Id.) The Harrison Agreement did not provide that SFS's collateral interest satisfied any part of the loan, which could be satisfied only by payment.

(Sotheby's SJ 56.1 Stmt. ¶56; Minor's Resp. to Sotheby's SJ
56.1 Stmt. ¶56.) SFS was secured by collateral with a total
value between $9 million and almost $14 million. (Id.) SFS
was also entitled to full recourse against the borrower,
whose obligation to repay was "absolute and unconditional"
and was "not subject to the results of the auction of the
Property." (Id.) The Harrison Agreement also provided that,
if the borrower defaulted, SFS could sell the collateral,
apply the proceeds to the loan debt, and pay over any
surplus to the borrower. (Sotheby's SJ 56.1 Stmt. ¶57;
Minor's Resp. to Sotheby's SJ 56.1 Stmt. ¶57.)

## 6. Sotheby's Agreement with the Owner of Peaceable Kingdom

Sotheby's interests in Peaceable Kingdom arise from an
August 2005 Secured Promissory Note and Security Agreement
(the "Esmerian Loan Agreement"), in which SFS agreed to
lend $11,574,650 to the owner, Ralph Esmerian ("Esmerian").
(Sotheby's SJ 56.1 Stmt. ¶59; Minor's Resp. to Sotheby's SJ
56.1 Stmt. ¶59.) Esmerian pledged over 300 items of
collateral, including Peaceable Kingdom, as security for
the loan. The collateral had a total value from $22,149,300
to $33,425,000. (Id.)  The Esmerian Loan Agreement did not
transfer title to the collateral to SFS; nor give SFS any
right to sell the collateral in the absence of a default;
and it did not give SFS any benefit of an increase in the

collateral value. (Sotheby's SJ 56.1 Stmt. ¶60; Minor's

Resp. to Sotheby's SJ 56.1 Stmt. ¶60.) In the Esmerian Loan

Agreement, Esmerian, as owner, granted SFS "'a continuing

security interest' in his right, title and interest ...in

and to the Collateral." (Sotheby's SJ 56.1 Stmt. ¶61;

Minor's Resp. to Sotheby's SJ 56.1 Stmt. ¶61.) The Esmerian

Loan Agreement provides that, when the loan to Esmerian is

repaid, SFS's "security interest in the Collateral will

terminate." (Id.)

    Esmerian failed to make required loan payments in

2007.  (Sotheby's SJ 56.1 Stmt. ¶63; Minor's Resp. to

Sotheby's SJ 56.1 Stmt. ¶63.) Although SFS advised him in

January 2008 that the loan was in default, SFS did not

exercise its right as a secured lender to compel an

involuntary sale of collateral. (Id.) Instead, SFS,

Sotheby's, Esmerian and the American Folk Art Museum[3]

negotiated a February 2008 agreement that provided for a

private sale of Peaceable Kingdom, followed by a public

auction if the private sale proved unsuccessful (the

"Esmerian Consignment Agreement"). (Id.) In the Esmerian

Consignment Agreement, Esmerian warranted to Sotheby's "and

---

[3] At the time SFS entered into the Esmerian Loan Agreement, it also
entered into an agreement with the American Folk Art Museum. (Sotheby's
SJ 56.1 Stmt. ¶62.) Esmerian made a promised gift of all of the
collateral to the Museum, subject to SFS's security interest. (Id.) The
Museum has the right to repay the loan and redeem the collateral if
Esmerian defaulted. (Id.)

the purchaser" that he was "the sole and absolute owner of
the Property and [had] the right to consign the Property
for sale." (Id.) Aspects of the sale of Peaceable Kingdom
were negotiated and agreed upon with Esmerian, including
(i) the sequence of a private sale followed by a public
auction, which Esmerian demanded; (ii) the $10 million bid
amount for the private sale; (iii) the $5 million auction
reserve; (iv) the auction estimates; and (v) payments by
auction buyers on any terms other than the immediate
payment required by the Conditions of Sale. (Sotheby's SJ
56.1 Stmt. ¶64; Minor's Resp. to Sotheby's SJ 56.1 Stmt.
¶64.)  Sotheby's also sought Esmerian's consent to allow
Minor 90 days to pay if he turned out to be the high bidder
for Peaceable Kingdom. (Id.) And SFS agreed that, if
Peaceable Kingdom were sold, the loan would not be in
default and the date for repayment would be extended. (Id.)

## II. LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure ("Fed.
R. Civ. P.") provides that a court shall grant a motion for
summary judgment "if the pleadings, the discovery and
disclosure materials on file, and any affidavits show that
there is no genuine issue as to any material fact and that
the movant is entitled to judgment as a matter of law."
Fed. R. Civ. P. 56(c).  "The party seeking summary judgment

bears the burden of establishing that no genuine issue of
material fact exists and that the undisputed facts
establish her right to judgment as a matter of law."
Rodriguez v. City of New York, 72 F.3d 1051, 1060-61 (2d
Cir. 1995).  The substantive law governing the case will
identify those facts that are material and "[o]nly disputes
over facts that might affect the outcome of the suit under
the governing law will properly preclude the entry of
summary judgment."  Anderson v. Liberty Lobby, Inc., 477
U.S. 242, 248 (1986).  In determining whether a genuine
issue of material fact exists, a court must resolve all
ambiguities and draw all reasonable inferences against the
moving party.  Matsushita Elec. Indus. Co., Ltd. v. Zenith
Radio Corp., 475 U.S. 574, 587 (1986).  "If, as to the
issue on which summary judgment is sought, there is any
evidence in the record from any source from which a
reasonable inference could be drawn in favor of the
nonmoving party, summary judgment is improper."  Chambers
v. TRM Copy Centers Corp., 43 F.3d 29, 37 (2d Cir. 1994).

        The same standard of review applies when the court is
faced with cross-motions for summary judgment. Morales v.
Quintel Entm't, Inc., 249 F.3d 115, 121 (2d Cir. 2001).
Each party's motion must be reviewed on its own merits, and

the Court must draw all reasonable inferences against the party whose motion is under consideration. Id.

## III. DISCUSSION

### A. SOTHEBY'S FIRST CLAIM

Sotheby's first claim for relief is based on Minor's purchase of Diamond Dust Shoes during the May 15, 2008 Auction and his subsequent failure to pay the purchase price. Under the governing UCC provisions, Sotheby's seeks to recover the purchase price Minor agreed to pay for Diamond Dust Shoes. Sotheby's seeks summary judgment in its favor for the purchase price, plus interest charges, attorneys' fees and expenses, all of which are provided for in the parties' contract. Minor has not moved for summary judgment in its favor on this claim.

In responding to Sotheby's request for summary judgment on its first claim for relief, Minor has not disputed that he is liable, or that Sotheby's is entitled to damages predicated on the amount Minor agreed to pay, plus interest at the contract rate and attorneys fees. Minor's only objection is that Sotheby's damages recovery should be reduced based on the amount Sotheby's has received from the resale of Diamond Dust Shoes. (Def. Halsey Minor's Mem. of Law in Opp'n to Pl.'s Mot. for Partial Summ. J. ("Minor's Opp'n to Sotheby's PSJ") at 16-

17.) Sotheby's does not dispute this issue. (Reply Mem. of Law in Supp. of Sotheby's Motion for Partial Summary Judgment ("Sotheby's PSJ Reply") at 2.) As Sotheby's moving papers acknowledge, if Sotheby's "chooses to sell Diamond Dust Shoes, it must credit Minor for the net proceeds of the sale." (Sotheby's PSJ Mot. at 17.) Sotheby's received payment for the resale of Diamond Dust Shoes on May 20, 2009. (Olsoff Reply Decl. ¶ 2.) After giving Minor credit for the full proceeds of the resale, he owes Sotheby's $82,500, in principal. (Id. at ¶¶ 2-4.)

As the parties agree that there is no genuine issue of material fact with respect to Minor's liability on the first claim, Sotheby's motion for summary judgment is GRANTED on the first claim in the amount of $82,500, plus interest, late charges and attorneys' fees.

## B. SOTHEBY'S SECOND AND THIRD CLAIMS

Sotheby's second and third causes of action are for breach of contract based upon Minor being the highest bidder at Sotheby's May 22, 2008 auction for Carriage in Winter and Peaceable Kingdom.

Minor argues that Sotheby's is not entitled to summary judgment on its second and third claims for relief because 1) Sotheby's had a duty to disclose its significant economic interests in Carriage in Winter and Peaceable

Kingdom, based on multiple common law and statutory principles; and 2) Minor has provided substantial evidence concerning the materiality of Sotheby's economic interests in the artworks. (Def.'s Opp'n to Sotheby's SJ Mot. at 19 - 20.) Minor's nondisclosure defense is pled in Minor's counterclaims, which seek rescission, rather than affirmative relief. Minor also asserts eight affirmative defenses which he claims bar Sotheby's recovery.

In addition to the arguments made in his opposition to Sotheby's summary judgment motion, Minor filed a motion for partial summary judgment on these claims in which he contends that contracts between the parties were never formed.

The Court finds that none of Minor's arguments have merit.

## 1. Sotheby's Duty to Disclose

In Minor's opposition to Sotheby's summary judgment motion, Minor identifies four alleged sources of Sotheby's duty to disclose: (1) Sotheby's fiduciary duty; (2) the superior knowledge possessed by Sotheby's concerning its interests in the works; (3) the partially misleading statement in the auction catalogue concerning Sotheby's use of the triangle symbol; and (3) relevant DCA regulations. (Minor's Opp'n to Sotheby's SJ Mot. at 29.)

## A. Sotheby's Fiduciary Duty

For the same reasons Judge Pitman found it would be futile to assert a counterclaim for breach of fiduciary duty, the Court finds that Minor's argument that Sotheby's had a fiduciary duty to disclose its interests in the paintings fails. The Court agrees with Judge Pitman that (1) Minor does not properly allege the existence of a fiduciary duty, (2) Minor has not pled an injury with particularity as required by Rule 9(b) of the Federal Rules of Civil Procedure,[4] and (3) Minor fails to identify how Sotheby's failure to disclose its interests is material.

## B. Sotheby's Superior Knowledge

Minor argues that even in the absence of a fiduciary duty, Sotheby's had a duty to disclose its interests because the facts concerning its interests were exclusively within its control and its superior knowledge rendered the transactions inherently unfair.

"'When dealing with a claim of fraud based on material omissions, it is settled that a duty to disclose arises only when one party has information that the other party is

---

[4] A breach of fiduciary duty claim based on fraud must be pled with particularity as required by Rule 9(b) of the Federal Rules of Civil Procedure. Adelphia Recovery Trust v. Bank of Am., N.A., 624 F. Supp. 2d 292, 319 (S.D.N.Y. 2009) (McKenna, J.)(citing Frota v. Prudential-Bache Secs., Inc., 639 F. Supp. 1186, 1193 (S.D.N.Y. 1986)("Rule 9(b) extends to all averments of fraud or mistake, whatever may be the theory of legal duty – statutory, common law, tort, contractual, or fiduciary"); Abercrombie v. Andrew Coll., 438 F. Supp. 2d 243, 274 (S.D.N.Y. 2006)(Karas, J.).

entitled to know because of a fiduciary or other similar
relation of trust and confidence between them.'" Creative
Waste Mgmt. v. Capitol Envtl. Servs., 429 F. Supp. 2d 582
(S.D.N.Y. 2006)(quoting  Travelers Indem. Co. of Ill. v.
CDL Hotels USA, Inc., 322 F. Supp. 2d 482, 499 (S.D.N.Y.
2004))(quoting United States v. Szur, 289 F.3d 200, 211 (2d
Cir. 2002)). Where parties are involved in an arms length
commercial transaction, there is no fiduciary duty to
disclose information absent specific circumstances, such as
the application of the "special facts doctrine." Id.; see
Mid-Island Hosp., Inc. v. Empire Blue Cross and Blue Shield
(In re Mid-Island Hosp., Inc.), 276 F.3d 123, 130 (2d Cir.
2002). Under this doctrine, the courts impose a duty on a
party with "superior knowledge of essential facts" to
disclose those facts where nondisclosure would make the
transaction inherently unfair. Travelers Indem., 322 F.
Supp. 2d at 499. For this doctrine to be applicable, "the
plaintiff must prove that '(1) one party has superior
knowledge of certain information; (2) that information is
not readily available to the other party; and (3) the first
party knows that the second party is acting on the basis of
mistaken knowledge.'" Id. (quoting Banque Arabe Et
Internationale D'Investissement v. Md. Nat'l Bank, 57 F.3d
146, 155 (2d Cir. 1995)).

Minor has not presented sufficient evidence to establish that Sotheby's knew Minor was acting on the mistaken belief that Sotheby's had no security interests in the paintings.

With respect to Peaceable Kingdom, Minor's only argument is based on a March 31, 2008 email he sent to Mitchell. The email states in relevant part: "I hear the Hicks guy is really in need of cash. I went to Williamsburg and saw 8 or so hicks spoke with the curator and some others and I think there is the possibility its not going to see 5." (Weiss SJ Decl., Ex. 20.) Minor testified in his deposition that his statement, "I hear the Hicks guy is really in need of cash," was actually a question that should have elicited a response describing Sotheby's relationship with "the Hicks guy," i.e., Ralph Esmerian. (Reply Decl. Howard B. Comet Supp. Sotheby's Mot. Summ. J. ("Comet Reply Decl."), Ex. 1 at 110-11.) That testimony is the only basis for Minor's contention that Sotheby's had the requisite knowledge that he was acting on a mistaken belief. (Minor Opp'n to Sotheby's SJ Mot. at 31-32.)

Even giving Minor the benefit of every rational inference derived from the email and the testimony, the Court does not find this to be sufficient evidence of Minor's claim to overcome Sotheby's motion for summary

judgment. Sotheby's argues that on its face, Minor's email statement is not a question, but rather a declarative statement of information Minor had obtained, which appears from the email to be only one part of the information he had learned, including that (i) "I know he [the Hicks guy] intends to get rid of it [Peaceable Kingdom], and (ii) "the possibility its not going to see 5," i.e., that the auction bidding for Peaceable Kingdom might not reach even $5 million. It is undisputed that Minor did not follow up on this issue with Mitchell, which Sotheby's claims would be expected if the statement had really been a question and was significant to Minor.

Moreover, Mitchell testified that she did not understand Minor's statement about "the Hicks guy" to be a question and, consequently, she did not respond. (Mitchell Decl. ¶23.) Mitchell further testified that in her 24 years with Sotheby's, no auction bidder has ever asked her if Sotheby's had made a loan to a consignor or had collateral interest in an auction item. (Id. at ¶25.) Minor testified in his deposition that, aside from whatever may appear in his email to Mitchell, he never asked her about the owner of Peaceable Kingdom or about Sotheby's arrangements with the owner. (Comet Reply Decl., Ex. 1 at 119.)

Most importantly, even under Minor's reading, there is
nothing in the email that indicates to an objective reader
that Minor was operating under the belief that Sotheby's
had no security interest in Peaceable Kingdom. Even if the
email is interpreted as a question, the email is an inquiry
about Esmerian's financial condition, not Sotheby's
interests in the painting. Under the case law, Minor must
offer evidence that Sotheby's believed he was basing his
decision about whether or how much to bid on Peaceable
Kingdom on a mistaken understanding about the matter that
was undisclosed.

With respect to Carriage in Winter, Minor makes no
argument and offers no evidence to establish that Sotheby's
thought Minor had a mistaken belief about its interests in
this painting. To the contrary, Minor admits that he "did
not have any discussion with Mitchell or Sotheby's about
Sotheby's arrangements with the owner of Carriage in
Winter." (Minor Resp. at 23 ¶32.) Thus, Minor's "special
facts" claim must be DISMISSED as to both paintings.

## C. Sotheby's Misleading Statement

Minor argues that Sotheby's auction catalogue was
misleading because it states that Sotheby's uses a triangle
symbol for lots in which it has an "economic interest
equivalent to an ownership interest," but Sotheby's did not

apply that symbol to Carriage in Winter and Peaceable
Kingdom. Sotheby's argues that it has not made any
misrepresentation. Sotheby's claims that the purpose of the
catalogue language about "an economic interest equivalent
to an ownership interest" was not to use the triangle
symbol for collateral interests, but only for joint venture
transactions in which Sotheby's acquired essentially all of
the interests of an owner of certain art works. (Sotheby's
SJ Mot. at 40.)

It is undisputed that the Sotheby's catalogue for the
May 22, 2008 Auction did not display a triangle symbol –
which would indicate that Sotheby's had an economic
interest equivalent to an ownership interest - next to
either Carriage In Winter or Peaceable Kingdom. (Def.'s
56.1 Statement in Supp. of PSJ ¶ 25; Resp. to Def.'s 56.1
Statement in Supp. of PSJ, ¶ 25.) Minor argues that
Sotheby's expects potential bidders to rely upon the
language in the catalogue regarding the triangle symbol.
(Def.'s PSJ Mot. at 8.)

The threshold issue and that in dispute, then, is
whether Sotheby's had an "economic interest equivalent to
an ownership interest" in both artworks. Minor relies on
provisions of Sotheby's loan and consignment agreements
with the owners of Carriage in Winter and Peaceable Kingdom

to argue that Sotheby's did. (Def.'s PSJ Mot. at 8-9.)
Sotheby's contends that it had "plain vanilla" security
agreements with the owners and that these agreements only
granted security interests — interests that are not
equivalent to ownership interests as a matter of law and do
not require disclosure as defined by the Symbol Key.
(Sotheby's Mem. of Law in Opp'n to Minor's Mot. for Partial
Summ. J. at 22-24; Sotheby's SJ Mem. at 18-22, 41-43). The
Court agrees with Sotheby's.

       In Endico Potatoes, Inc. v. CIT Group/Factoring, Inc.,
67 F.3d 1063 (2d Cir. 1995), the Second Circuit analyzed
several economic issues to decide whether the defendant
obtained an ownership interest or no more than a security
interest in a dealer's account's receivable. The Court
stated that the analysis depends on the substance of the
relationship between the contracting parties, and not
simply the label attached to the transaction. Id. at 1068.
In determining the substance of the transaction, the Court
considered a number of factors:

       the right of the creditor to recover from the debtor
       any deficiency if the assets assigned are not
       sufficient to satisfy the debt, the effect on the
       creditor's right to the assets assigned if the debtor
       were to pay the debt from independent funds, whether

the debtor has a right to any funds recovered from the
sale of assets above that necessary to satisfy the
debt, and whether the assignment itself reduces the
debt.

Id. at 1068 (citing authorities). As the Second Circuit
explained, the root of all of these factors is the transfer
of risk. Where the lender has purchased the accounts
receivable, the borrower's debt is extinguished and the
lender's risk with regard to the performance of the
accounts is direct, that is, the lender and not the
borrower bears the risk of non-performance by the account
debtor. If the lender holds only a security interest,
however, the lender's risk is derivative or secondary, that
is, the borrower remains liable for the debt and bears the
risk of non-payment by the account debtor, while the lender
only bears the risk that the account debtor's non-payment
will leave the borrower unable to satisfy the loan.

Applying the criteria cited here, it is clear that
Sotheby's had only a security interest in Carriage in
Winter and Peaceable Kingdom. Because Sotheby's loans were
oversecured and were full recourse loans, it had the right
to recover any deficiency if the paintings were sold for

amounts that were insufficient to satisfy the debts.[5] Both

consignors also had the right to pay their loan debts at

any time and from any source, which would terminate

Sotheby's interest in the paintings.[6] If the paintings were

sold for more than the debt, then Sotheby's had to pay the

surplus to the consignors.[7] And the grant of each security

interest did not by itself satisfy any of the loan debt,

which could be satisfied only by actual repayment.[8] Under

[5] See Secured Promissory Note and Security Agreement ("Esmerian Loan
Agreement"), Aug. 18, 2005, Attach. to Weiss Decl. in Opp'n to
Sotheby's Mot. for Summ. J., Ex. 3 at 6 (stating, "[Esmerian] shall
remain fully liable for any deficiency following any sale of any or all
of the Collateral"); See Loan and Consignment Agreement between SFS
(Sotheby's Financial Services) and James A Harrison and Maurice S.
Spanbock, Esq., CO-Trustees of the Gilbert A. Harrison Trust ("Harrison
Agreement"), Weiss Decl. Ex. 12 at 3 (stating, "If the balance of the
net proceeds of the Property's sale is insufficient to repay the
outstanding balance of the Loan, with interest, when due, you will pay
[Sotheby's] any deficiency without further notice").
[6] See Esmerian Loan Agreement, Weiss Decl. Ex. 3 at 7 (stating, "Upon
repayment of the principal amount hereof in full with accrued interest
and payment of all other amounts due Sotheby's hereunder, Sotheby's
security interest in the Collateral will terminate."); See Harrison
Agreement, Weiss Decl. Ex. 12 at 3 (stating, "Sotheby's will return the
unsold Property to [the Trust] if the outstanding balance of the Loan,
with interest, if any, has been paid in full.")
[7] See Esmerian Loan Agreement, Weiss Decl. Ex. 3 at 11 (stating, "The
sale proceeds of any auction or private sale ... will be applied first
to pay accrued interest on the Loan, second to repay principal of the
Loan, and third, any excess will be paid to [Esmerian]"); See Harrison
Agreement, Weiss Decl. Ex. 12 at 3 (stating, "Sotheby's will deliver to
[the Trust] the remaining balance of the net proceeds, if any.")
[8] See Esmerian Loan Agreement, Weiss Decl. Ex. 3 at 3 (stating, "The
obligations of [Esmerian] hereunder are absolute and unconditional and
the payment of any amounts due hereunder shall not be subject to the
results of any sale of the Collateral or to any defenses, set-offs or
counterclaims of any kind whatsoever."); See Harrison Agreement, Weiss
Decl. Ex. 12 at 10 (stating, "The payment of any amounts due to SFS and
Sotheby's hereunder shall not be subject to any defenses, setoffs or
counterclaims of any kind whatsoever. [The Trust's] obligation to repay
the Loan and accrued interest thereon is absolute and unconditional and
is not subject to the result of the auction at Property.")

Endico, therefore, Sotheby's interests were not equivalent
to ownership interests.

    Moreover, factors other than those cited in Endico
further indicate that Sotheby's did not possess ownership
interests in the two paintings. The owners expressly
represented and warranted in their respective agreements
with Sotheby's that they were the sole owners of the
collateral items[9]; nothing in the agreements purports to
transfer ownership or any of the risks or benefits that
define ownership interests; and the collateral and
foreclosure rights that were granted to Sotheby's are the
normal rights of a secured party under the Uniform
Commercial Code.

    This analysis is not changed, with respect to
Peaceable Kingdom, by the fact that Sotheby's notified
Esmerian that his loan was in default. Sotheby's did not
exercise its rights as a secured creditor to compel an
involuntary sale of the painting, but rather negotiated a
consignment agreement with Esmerian that provided for

---

[9] See Esmerian Loan Agreement, Weiss Decl. Ex. 3 at 7 (stating,
"[Esmerian] is, and has been for at least ninety days prior to the date
hereof, the sole and absolute owner of each item of the Collateral...
and a buyer of any item of the Collateral will obtain good title to
such item."); See Harrison Agreement, Weiss Decl. Ex. 12 at 4 (stating,
"You represent and warrant to SFS, Sotheby's and the purchaser of any
Property that...At the time of the consignment of the Property to
Sotheby's [the Trust is], the sole and absolute owner of the
Property.")

eliminating the default.[10] But even if Sotheby's had
enforced its rights as a secured creditor, that would not
have given it an ownership interest. A secured creditor who
repossesses property does not become the owner and does not
have the same control over a sale as an owner.[11] The owner
retains the right to pay the debt and redeem the property.
UCC ¶ 9-623. And the creditor does not (i) have the benefit
of any surplus proceeds above the debt (which must be paid
to the owner under UCC § 9-615(d)) or (ii) incur a loss if
the property sells for less than the debt where, as here,
the loan is secured by additional collateral and is a full
recourse loan.

Minor contends that the agreements provided
Sotheby's with "economic benefits" equivalent to ownership
rights because the agreements provided for Sotheby's to

---

[10] See Letter Agreement between Esmerian, SFS, and Sotheby's regarding
the Peaceable Kingdom ("Esmerian Loan Agreement"), Weiss Decl. Ex. 7.
[11] As stated in a leading treatise, "Default gives the secured creditor
the right to possession, but the [UCC Article 9] scheme assumes that
the [borrower] remains the owner-debtor even after possession. Thus,
the secured party in possession must use reasonable care in the custody
and preservation of collateral ... must hold non-cash proceeds of the
collateral as additional security and must apply cash proceeds to the
debt or remit them to the debtor ... must give reasonable authenticated
notice of disposition to the debtor before disposing of the collateral
and ever aspect of the disposition must be commercially reasonable. The
disposition sale transfers 'all of the debtor's rights in the
collateral' to the buyer at the sale. The debtor may veto any attempt
by the creditor to simply retain the collateral as its own asset. After
disposition, the financier must account to the debtor for any surplus
realized over and above the amount of the debt. The entire scheme is
premised on the core and central understanding that repossession does
not wipe out the debtor's interest in the collateral." 1BP. Coogan, et
al., Secured Transactions Under the Uniform Commercial Code § 8.07
(2007)(citations omitted).

31

apply proceeds from sales of Peaceable Kingdom and Carriage in Winter to repayment of loans Sotheby's made to the owners of the paintings. (Def.'s PSJ Mot. at 3-4, 8-9.) This argument is directly contrary to applicable law. The Second Circuit has made clear that where, as here, a lender does not have the right to use proceeds of a sale of property as he sees fit, but rather is required by a secured loan agreement to apply the proceeds to reduce an outstanding loan debt, that requirement confirms that the property was owned by the borrower and that the lender had only a security interest in the property. E.g., In re Joseph Kanner Hat Co., Inc. v. City Trust Co., 482 F.2d 937, 940 (2d Cir. 1973) (assignment to bank of the debtor's claim to a payment owed to the debtor by a third party gave bank a security interest that secured repayment of a loan the bank had made to the debtor, and not ownership of the claim, since "any payment received under the assignment would be applied to reduce the amount of the loan"); Wells Fargo N.W. Bank, N.A. v. Varig-S.A., 2003 WL 21508341, at *2 (S.D.N.Y. June 27, 2003)(assignment agreements conveyed only security interest, and not ownership, since all payments "were used to reduce the outstanding balance on plaintiffs' loan), aff'd, 108 Fed.Appx. 6 (2d Cir. 2004); United States v. Poling, 73 F.Supp.2d 882, 893 (S.D. Ohio

1999)(under New York law, one factor that indicates "when
an assignment operates to create a security interest
instead of [ownership]" is that "the payments received are
used to reduce the outstanding balance"); Trinity Holdings,
Inc. v. Firestone Bank, 1994 WL 449258, at *4)(W.D.Pa. May
4, 1994)(payments "were to be applied as a credit in favor
or the [borrowers] at the bank"), aff'd, 66 f.3d 313 (3d
Cir. 1995).

The terms of the agreements make clear that what
Sotheby's held was no more than a security interest in both
Carriage in Winter and Peaceable Kingdom. As it is
undisputed that the triangle symbol only pertains to
"economic interest equivalent to an ownership interest,"
Sotheby's did not misrepresent its interests. Accordingly,
Minor's misleading statement claim must be DISMISSED on
this basis and the Court will not reach Sotheby's
additional grounds for dismissal.

Additionally, in Minor's opposition to Sotheby's
summary judgment motion, he argues that his rescission
claim is based on a theory of "innocent misrepresentation."
(Minor's Opp'n to Sotheby's Summ. J. Mot. at 41.) An
innocent misrepresentation applies only to actual
misrepresentations. Steen v. Bump, 233 A.D.2d 583, 584, 649
N.Y.S.2d 731,733 (3d Dep't 1996.) As the Court has already

found that Sotheby's did not make any actual

misrepresentations, Minor's innocent misrepresentation

claim must be also be DISMISSED.

### D. DCA Regulations

Minor argues that the DCA regulations required

Sotheby's to disclose its interest in Peaceable Kingdom.[12]

Sotheby's contends that Minor's claim is precluded by his

judicial admissions. It is well-settled that statements by a

party's attorneys in legal papers or oral arguments can be

binding judicial admissions. E.g., Schwan-Stabilo Cosmetics

GmbH & Co. v. PacificLink Int'l Corp., 401 F.3d 28, 35 (2d

Cir. 2005) ("We have held that statements in papers

submitted to the court may constitute judicial

admissions."); Accord Purgess v. Sharrock, 33 F.3d 134, 144

(2d Cir. 1994) ("A court can appropriately treat statements

in briefs as binding judicial admissions of fact.");

General Ins. Co. of Am. v. Mezzacappa Bros., Inc., 2003 WL

22244964, at *5 (E.D.N.Y. Oct. 1,2003) ("Statements made by

an attorney during oral argument thus constitute binding

judicial admissions").

Here, Minor made a judicial admission in his response

to Sotheby's motion for partial summary judgment. Minor

---

[12] Nowhere in his argument does Minor contend that the DCA regulations
required disclosure of Sotheby's interests in Carriage in Winter.
(Minor Opp'n to Sotheby's SJ Mot. at 38-39.)

stated that his claims are "not based on, or brought under
any DCA regulations." (Minor's Opp'n to Sotheby's SJ Mot.
at 8.) Minor goes on to argue that "the DCA regulations are
relevant only insofar as they constitute evidence of
materiality of the information Sotheby's concealed from
Minor, i.e., the materiality of its economic interest in
the artworks at issue." (Id.) Sotheby's argues that the
Court should therefore dismiss any claim by Minor that
relies on the DCA regulations. Geller v. Prudential Ins.
Co. of Am., 237 F. Supp.2d 210, 220 (E.D.N.Y. 2002)
(granting summary judgment based on admission in oral
argument); General Ins. Co., 2003 WL 22244964, at * 5
(same). The Court agrees. Minor's claims based on the DCA
regulations are hereby DISMISSED.

## 2. Contract Formation

Minor's Motion for Partial Summary Judgment on
Sotheby's second and third claims is premised on the theory
that Sotheby's proper use of the triangle symbol
constitutes a condition precedent to the formation of a
contract. (Def.'s PSJ Mot. at 8.) As discussed above, the
Court finds that what Sotheby's held was no more than a
security interest in both Carriage in Winter and Peaceable
Kingdom. As it is undisputed that the triangle symbol only
pertains to "economic interest equivalent to an ownership

35

interest," Sotheby's did not fail to fulfill a condition

precedent by not applying the symbol to the paintings at

issue. Accordingly, Minor's Motion of Partial Summary

Judgment based on this theory is DENIED.

## 3. MINOR'S AFFIRMATIVE DEFENSES

In his Amended Answer, Minor asserts eight affirmative

defenses: (1) breach of contract, (2) misrepresentations

and omissions, (3) breach of fiduciary duty, (4) fraud, (5)

breach of the implied covenant of good faith and fair

dealing, (6) violation of New York law (including N.Y. Gen.

Bus. Law § 349), and California law (including its consumer

protection legislation), (7) failure to mitigate damages,

and (8) rescission. All of these defenses must be

DISMISSED.

Minor's first affirmative defense states only that,

"Plaintiff's claims are barred by its own breach of

contract." (Def.'s First Am. Answer, Countercls., and Jury

Demand ("Am. Answer"), dated March 9, 2010, at 3.) While it

is unclear from the pleadings which terms of the agreement

Sotheby's allegedly breached, Minor appears to argue that

Sotheby's breached its contract by failing to disclose its

interests. In light of the Court's determination that there

is no material issue of fact with respect to Sotheby's duty

to disclose its interests in the paintings, this
affirmative defense fails.

Minor's affirmative defenses based on fraud[13] are
without merit for the same reasons Minor's breach of
fiduciary duty claim based on fraud fails - Minor fails to
allege with particularity that Sotheby's conduct caused any
actual or potential injury to either Minor or the public.
(See supra Section B(1)(A).)

Minor's sixth affirmative defense states that
"Plaintiff's claims are barred by its violations of New
York law (including, N.Y. Gen. Bus. Law §349) and
California law (including its consumer protection
legislation)." (Am. Answer at 3.) Judge Pitman found that
Minor could not assert a counterclaim for violation of the
N.Y. Bus. Law Section 349 because he failed to properly
allege an essential element of the claim - that he was
injured as a result of the deceptive practices.[14] For the

---

[13] Minor's second, third, fourth, and fifth affirmative defenses are
based on fraud. In Minor's Amended Answer, he characterizes Sotheby's
omissions as materially misleading (Am. Answer ¶¶ 43-44, 60) and
alleges that "Sotheby's intentionally and in bad faith concealed from
Mr. Minor that it had an economic interest" in Carriage in Winter and
Peaceable Kingdom "in order to induce" him to purchase the paintings
(Am. Answer ¶¶ 47,62). These allegations are "averments of fraud" and
therefore the particularity requirements of Rule 9(b) apply to these
defenses. See Accord Aspex Eyewear, Inc. v. Ciardi Eyewear, Inc., 531
F. Supp.2d 620, 623 (S.D.N.Y. 2008) ("affirmative defenses are
pleadings, and therefore, are subject to all pleading requirements of
the Federal Rules of Civil Procedure") (citation omitted).
[14] No new facts have been alleged in the Amended Answer which would
support a claim under this law. (See Judge Pitman's October 27, 2009
Order at 9-16.)

37

same reason, Minor's claim cannot stand as an affirmative defense. Minor's defense premised on Sotheby's violation of another New York law or California law must also be dismissed because Minor has not identified the laws at issue, let alone how they were allegedly violated. As the Second Circuit has made clear, "Affirmative 'defenses which amount to nothing more than mere conclusions of law and are not warranted by any asserted facts have no efficacy.'" Shechter v. Comptroller of the City of New York, 79 F.3d 265, 269-70 (2d Cir. 1996) (citation omitted). Accordingly, this defense fails.

Minor also asserts that Sotheby's claims are barred by its failure to mitigate any purported damages. However, it is undisputed that Sotheby's re-sold all three paintings. In the absence of evidence that Sotheby's did not make a "reasonable effort to resell [the cancelled items] at a reasonable price," as stated in U.C.C. § 2-709(1), the Court does not find that Sotheby's failed to mitigate its damages.

Minor's eighth affirmative defense asserts only that the contracts between the parties be rescinded. Minor alleges no basis for this form of relief, but rather requests the same form of relief that is requested in his counterclaims. The Court finds that this affirmative

defense fails for the same reasons set forth in Section B,
denying Minor's counterclaims for fraud-based rescission.

As none of Minor's defenses or counterclaims bar
Sotheby's recovery with respect to its second and third
claims, Sotheby's motion for summary judgment on the second
claim is GRANTED in the amount of $1,638,500, plus
interest, late charges, and legal fees, and in the amount
of $2,673,000, plus interest, late charges, and legal fees,
on the third claim.

## C. SOTHEBY'S MOTION IN LIMINE

In conjunction with its summary judgment motion,
Sotheby's has also moved to exclude testimony by two expert
witnesses, Robert Ross ("Ross") and Robert Wunderlich
("Wunderlich") proffered by Minor.

Ross is offering opinions (i) that it is the custom
and practice of auction houses to disclose when they have
an economic interest equivalent to an ownership interest in
an auction lot, which he believes includes a collateral
interest; and (ii) that disclosure of such an interest is
material and significant to a potential bidder. Minor's
other expert, Wunderlich, offers a single opinion
pertaining only to Peaceable Kingdom: "that Sotheby's had a
significant economic interest in the Peaceable Kingdom,

equivalent from an economic perspective to an ownership interest." (Ex. 2 at 5.)

As the Court has already determined that Sotheby's interests are not ownership interests as a matter of law, Sotheby's Motion In Limine to exclude the expert testimony is DENIED AS MOOT.

## D. MINOR'S MOTION TO STRIKE

Minor has moved to strike material Sotheby's submitted in support of its summary judgment reply. In particular, Minor seeks to strike three declarations and the recordings of Minor's telephonic bids with Mitchell during the May 22, 2008 auction. This motion is DENIED AS MOOT because the Court has not relied upon the declarations or the recording in deciding Sotheby's motion for summary judgment. See, e.g., Fowler v. Transit Supervisors Org., 2000 U.S. Dist. LEXIS 3544 (S.D.N.Y. 2000)(denying motion to strike as moot because Court did not rely on affidavit in determining motion for summary judgment).

## E. MINOR'S EVIDENTIARY OBJECTIONS

In connection with Sotheby's Motion for Summary Judgment, Minor also submits evidentiary objections as to the declarations of Olsoff, Mitchell, Prasens, and Bentoff. (Def.'s Evid. Obj. to Portions of Decls. Submitted in Supp. of Sotheby's Mot. for Summ. J., dated Sept. 3, 2009.)

Minor's objections fall into three broad categories: First, Minor objects to the declarations by Sotheby's witnesses on the ground that their personal knowledge has not been sufficiently established and their declarations therefore lack foundation; Minor's second category of objections invokes the best evidence rule, Fed. R. Evid. 1002; finally, Minor objects on relevancy grounds to testimony about discussions in which he admitted that he lacked the funds to pay Sotheby's.

Fed. R. Civ. P. Rule 56(e) states that affidavits "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." A court is not required to conduct a line-by-line analysis of a challenged affidavit, however, and may simply disregard those portions that are inadmissible. See Rus, Inc. v. Bay Indus., Inc., 322 F. Supp. 2d 302, 307 (S.D.N.Y. 2003) ("To the extent that an affidavit or declaration contains material that does not comply with Rule 56(e), the Court may strike those portions, or may simply disregard them") (citation omitted); Flaherty v. Filardi, No. 03 Civ. 2167 (LTS)(HBP), 2007 U.S. Dist. LEXIS 4595, 2007 WL 163112, at * 4 (S.D.N.Y. Jan. 24, 2007) (denying a motion to strike and explaining that the court "will not expend limited

judicial resources scrutinizing each line" of an
affidavit).

Here, there is no basis for disregarding any affidavit
in its entirety. The Court has disregarded, however, those
portions of the affidavits that are not based on personal
knowledge, rely on hearsay, are irrelevant or are otherwise
inadmissible. See Hollander v. Am. Cyanamid Co., 172 F.3d
192, 198 (2d Cir. 1999) abrogated on other grounds by
Schnabel v. Abramson, 232 F.3d 83 (2d Cir. 2000) (court may
disregard "portions of an affidavit that are not based upon
the affiant's personal knowledge, contain inadmissible
hearsay or make generalized and conclusory statements");
See, e.g., U.S. Alliance Fed. Credit Union v. Cumis Ins.
Soc'. Inc., 2009 U.S. Dist. LEXIS 83047 (S.D.N.Y.
2009)(disregarding portions of affidavits not based on
admissible evidence).

Because the Court only relied on admissible evidence
in reaching its summary judgment decision, Minor's
evidentiary objections are overruled.

## IV. CONCLUSION

For the reasons set forth above, Plaintiff's Motions for
Summary Judgment are GRANTED with respect to all its
claims. Defendant's Motion for Partial Summary Judgment is
DENIED. Plaintiff's Motion In Limine and Defendant's Motion

to Strike are DENIED AS MOOT. Because no further issues
remain to be decided in this action, the Clerk of the Court
is directed to close the case.

**SO ORDERED:**

BARBARA S. JONES

**UNITED STATES DISTRICT JUDGE**

Dated: New York, New York

March 30, 2010